# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| JAMES DAVIS,<br><br>      Plaintiff,<br><br>  v.<br><br>LT. DONALD MORRELL,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:08-CV-234 TS<br><br>District Judge Ted Stewart |

Plaintiff, James Davis, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2010). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 id. 1915. Before the Court is Defendant's motion for summary judgment.

## ANALYSIS

### I. Procedural Background

Plaintiff's Complaint, filed on March 25, 2008, alleges a single claim of cruel and unusual punishment under the Eighth Amendment based on failure to protect Plaintiff from being attacked by his cellmate. Following screening of Plaintiff's Complaint, the Court ordered the United States Marshals Service to serve process upon Defendant. Defendant filed an Answer to the Complaint on April 1, 2009. In its order for service of process the Court instructed Defendant to file a *Martinez* Report

and, if appropriate, a motion for summary judgment. Plaintiff was also instructed that if Defendant moved for summary judgment Plaintiff could not rest upon the mere allegations of his Complaint but must come forth with admissible evidence showing a genuine issue remaining for trial, as required under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56. On July 8, 2009, Defendant filed his *Martinez* Report along with a motion for summary judgment and supporting memorandum. After being granted additional time to respond, Plaintiff filed his opposition brief on August 5, 2009. Included with the opposition brief is Plaintiff's own sworn affidavit and those of two other inmates who purportedly observed Plaintiff's interactions with Defendant. (Doc. no 50, Ex. A-C.) Defendant filed a timely reply brief disputing the admissibility of Plaintiff's affidavits but did not file a separate motion to strike them.

## II. Summary Judgement Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Cellotex v. Catrett*, 477

U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).  Thus, Rule 56(a) allows a party claiming relief to move, "with or without supporting affidavits, for summary judgment on all or part of [a] claim."  Fed. R. Civ. P. 56(a)(2).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case."  *Cellotex v. Catrett*, 477 U.S. 317, 325 (1986).  This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case.  *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element."  *Id.*  Under Rule 56(e)(2) a nonmovant that would bear the burden of persuasion at trial must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."  *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998).  The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition

transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

### III. Material Facts[1]

Plaintiff is an inmate at the Utah State Prison (USP). At all times relevant to this case Defendant Morrell was a Utah Department of Corrections (UDC) officer serving as Lieutenant of the Uinta 2 maximum security housing unit. In early September of 2005, Plaintiff told Morrell that Plaintiff was not getting along with his cellmate, inmate Diaz. Plaintiff stated that he and Diaz were "not compatible" and that he wanted to move to a different cell. Morrell asked if Plaintiff wanted to list Diaz as a safety concern on his "Offender Safety Concerns" database in the Offender Track system (O-Track). Morrell told Plaintiff that

---

[1] The material facts presented here are drawn from Defendant's *Martinez* Report (Doc. nos. 39-41) and Memorandum in Support of Motion for Summary Judgment (Doc. nos. 43, 45) and, except as noted herein, are undisputed. Although Plaintiff's opposition memo argues against Defendants' interpretation of some of the facts, it does not specifically controvert any of Defendant's stated material facts, as required under Rule 56. *See* Fed. R. Civ. P. 56.

4

if Diaz was identified by Plaintiff as a safety concern Plaintiff would be moved immediately. Plaintiff stated that he did not want to identify Diaz as a safety concern but still wanted to move. Morrell told Plaintiff that if he could find someone willing to trade cells with him that Morrell would make the change.

On September 23, 2005, Plaintiff told Morrell that Plaintiff had found an inmate willing to trade cells with him and that he still wanted to move. Later that day, however, before Morrell could carry out the transfer, an altercation occurred on the cell-block involving other inmates and the entire housing section had to be locked down. During the lock down Diaz attacked Plaintiff while they were in their cell. Plaintiff states that without any provocation or warning Diaz began hitting him with a pad-lock in a laundry bag. Plaintiff suffered serious injuries during the altercation and had to go to the infirmary.

While being treated for his injuries Plaintiff was interviewed by investigator Stephens regarding the altercation with Diaz. Plaintiff denied that Diaz had ever directly insulted or threatened Plaintiff and stated that up until the attack began Plaintiff thought everything was fine. (Doc. no 44, Ex. F.) Plaintiff also stated that although he suspected Diaz might be a gang member he did not become aware of Diaz' gang affiliation

5

until after the altercation.

### IV. Legal Standard for Failure to Protect Claims

To state a claim under the Eighth Amendment for failure to provide adequate protection from other inmates, a plaintiff must satisfy two elements. First, the plaintiff must allege facts showing "that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1977 (1994). Second, the plaintiff must show that the prison official had "a 'sufficiently culpable state of mind' . . . one of 'deliberate indifference to inmate health or safety.'" *Id*. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2326 (1991)). A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. The official's state of mind must be measured by a subjective standard, meaning he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Id*. at 842. Thus, "a factfinder may conclude that a prison official knew of a substantial risk from the very

fact that the risk was obvious." *Id*.

The deliberate indifference requirement is not satisfied by either negligence or constructive notice. *Id.* at 835, 841. This is because an official's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id*. at 838.

## V. Evidentiary Sufficiency

### A. Substantial Risk of Serious Harm

Defendant contends that the evidence does not show Plaintiff was housed under conditions posing a substantial risk of serious harm. To support this contention Defendant points out that Plaintiff did not list Diaz as a safety concern, nor did Plaintiff ever report any threats or insults by Diaz toward Plaintiff. Defendant also relies on Plaintiff's statements to investigator Stephens that prior to the altercation Plaintiff never had an argument with Diaz, that the attack caught Plaintiff completely by surprise, and that everything seemed to be going fine up until the attack. (Doc. no 44, Ex. F.)

Plaintiff counters that although he declined to list Diaz as a safety concern he did tell Defendant that he was "not getting along" with Diaz and that he and Diaz were not "compatible." Plaintiff asserts that Defendant should have known, based on his

7

vast corrections experience, that Plaintiff's reports of "incompatibility" and "not getting along" were actually code words for a serious safety concern; and, that Plaintiff's refusal to list Diaz as a safety concern was based on fear of being labeled a "snitch." Plaintiff also asserts that Defendant should have been aware from his experience and access to the O-Track system that Plaintiff was a sex offender and Diaz was a gang member, which placed Plaintiff at greater risk of being assaulted by Diaz.

Despite Plaintiff's conjecture, the Court finds that Plaintiff has not produced sufficient evidence to satisfy the first prong of the Eighth Amendment failure to protect standard. The evidence regarding Plaintiff's interactions with Morrell does not support a finding that Morrell was aware of a serious safety concern. Plaintiff has not submitted any evidence supporting his contention that obfuscatory complaints about "incompatibility" and "not getting along" are commonly used by prisoners to report serious safety concerns without being labeled snitches. More importantly, regardless of whether some officers might have discerned Plaintiff's intended meaning, Plaintiff has not shown that Morrell himself subjectively understood that Plaintiff was reporting a serious safety concern. In fact, Defendant's response to Plaintiff--asking him whether he wanted to identify

8

Diaz as a safety concern--clearly indicates that Defendant viewed Plaintiff's request for a transfer as merely a compatibility issue.  Finally, from a policy perspective, inmates should not be encouraged to use code words or innuendo for communicating serious safety concerns, as doing so will inevitably lead to misunderstandings with dangerous results.  This is undoubtedly why the prison uses a formal safety concern reporting system.

   Plaintiff's circumstantial evidence regarding Morrell's knowledge and experience are also insufficient to show that Morrell subjectively perceived a substantial risk.  Although knowledge of a substantial risk can be inferred from circumstantial evidence, Plaintiff has not produced sufficient evidence to support such an inference here.  As an initial matter, Plaintiff has not presented admissible evidence to support his contentions that Morrell knew Plaintiff was a sex offender and that Diaz was a gang member.  The sworn declarations submitted by Plaintiff do not appear to be based on personal knowledge and are partly hearsay.[2]  More importantly, even if Plaintiff could produce admissible evidence on these points, they do not support the inference that Morrell understood Plaintiff to

---

[2] Although the Declarations appear largely inadmissible, given Plaintiff's *pro se* status and the lack of any motion to strike them entirely, the Court has considered them to the extent allowable under the Rules of Evidence.

be in jeopardy. Regardless of whether Morrell knew that Plaintiff was a sex offender, Morrell had no reason to believe that Diaz was aware of that information. Plaintiff does not assert that he told Diaz about his sex offender status; in fact, he admits that sex offenders are encouraged to keep their criminal backgrounds secret. Moreover, there is no evidence in the record to suggest that Diaz' attack on Plaintiff had anything to do with Plaintiff's sex offender status. Finally, even if Morrell knew that Plaintiff was a sex offender, and was aware of attacks on other sex offenders by gang members, that information alone would not have put Morrell on notice that Plaintiff was in substantial danger.

Thus, the Court finds that the evidence here does not show that Plaintiff was housed under conditions posing a substantial risk of serious harm.

### B. Deliberate Indifference

The evidence in this case is also insufficient to show that Defendant was deliberately indifferent concerning Plaintiff's safety. Plaintiff argues that Defendant showed deliberate indifference by requiring Plaintiff to list Diaz as a safety concern--thereby risking being labeled a snitch--before Plaintiff could be immediately transferred. The Court does not believe that requiring inmates to formally identify other inmates as

10

safety concerns shows deliberate indifference.  While the risk of being labeled a snitch is undoubted a trade-off, it seems a reasonable price to pay if faced with a substantial risk of serious harm.  This is especially true given the extremely complicated logistics of managing thousands of inmates, each with their own safety concerns, and the propensity of some inmates to try to manipulate their housing assignments for nefarious purposes.  Moreover, there is no evidence in the record to suggest that an inmate's security concerns are made known to other inmates, which would heighten the risk of being labeled a snitch.

Similarly, Plaintiff's evidence regarding an unwritten policy of prohibiting immediate transfers unless inmates are "about to fight" is not sufficient to show deliberate indifference.  First, Plaintiff has not provided sufficient evidence that such an unwritten policy or practice even exists.  The only evidence of such a policy submitted by Plaintiff are the Declarations of inmates Shivers and Larsen which completely lack foundation.  Although Shivers and Larsen state that they are aware of such a policy they do not say how they became of aware of it, who promulgated it, whether Defendant was aware of it, or even whether Defendant applied it in this case.  (Doc. no. 50, Ex. A-B.)

Second, Plaintiff's reliance upon hearsay regarding an alleged unwritten policy is directly controverted by Defendant's evidence regarding UDC's official policy for handling inmate safety concerns. Chapter FDr08 Section 02.04(C) of the UDC Institutional Operations Division Manual, entitled "Inmate Safety Concerns," sets forth the guidelines to be utilized to determine safety concerns. (Doc. no. 45, Ex. B.) As that section shows, inmates need not be "about to fight" in order to have a valid safety concern. In fact, threats and many other circumstances can all be grounds for recognizing a safety concern. Notably, the concerns Plaintiff expressed to Defendant do not satisfy any of these policy guidelines.

Finally, Defendant's apparent willingness to accommodate Plaintiff if he could find someone willing to trade cells, despite the lack of any obvious safety concern, undermines Plaintiff's assertion that Defendant was deliberately indifferent. Plaintiff admits that Defendant agreed to carry out the transfer once Plaintiff identified someone willing to trade cells. Plaintiff also does not dispute that the trade would have occurred had it not been for the unforeseen lock down. And, Plaintiff admits that up until that time nothing had changed in terms of his relationship with Diaz that made an urgent transfer necessary. The fact that the attack occurred before the transfer

could be carried out appears to be merely an unfortunate coincidence.

Thus, the Court concludes that Plaintiff has not satisfied his burden on summary judgment of producing admissible evidence showing that Defendant was deliberately indifferent to a substantial risk of serious harm to Plaintiff. Defendant is, therefore, entitled to summary judgment.

## VI. Qualified Immunity

Having concluded that the evidence in this case does not support a finding that Defendant violated Plaintiff's rights under the Eighth Amendment, the Court need not address Defendant's assertion of qualified immunity.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion for an Order to Show Cause is DENIED, because the Defendants timely filed their answer;

(2) Plaintiff's Motion for an enlargement of time to file his response to the Motion for Summary Judgment is GRANTED and his response was timely filed;

(1) Defendant's Motion for Summary Judgment is **GRANTED;** and

(2) this case is **CLOSED.**

DATED this 26th day of March, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge